## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **DARLA BELL** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) |
| | ) |
| **WYNDHAM DESTINATIONS INC.,** | ) **Docket No:** |
| **INC., WYNDHAM VACATION RESORTS,** | ) |
| **INC., and** | ) |
| **WYNDHAM VACATION OWNERSHIP,** | ) |
| **INC.** | ) |
| | ) |
| **Defendants.** | ) |

## COMPLAINT

COMES NOW the Plaintiff, Darla Bell and for her Complaint (hereinafter "Complaint") against Wyndham Destinations, Inc.; Wyndham Vacation Resorts, Inc. and Wyndham Vacation Ownership (hereinafter collectively referred to jointly as "Defendants") state as follows:

## PARTIES

1. At all times relevant to this complaint Plaintiff has resided in Michigan.

2. Defendants Wyndham Destinations, Inc., formerly known as Wyndham Worldwide Operations, Inc. (hereinafter referred to as "WWO" or "Destinations," "Developer" or "Defendant" or "Wyndham" or "WYND") is a corporation formed in Delaware and operating in the State of Tennessee, with a principal office of business as 22 Sylvan Way, Parsippany, NJ 07054 and a registered agent, Corporate Creations Network Inc, 205 Powell Place, Brentwood, TN 37027.

1

3.      Defendants Wyndham Vacation Resorts, Inc. (hereinafter referred to as "WVR," "Developer" or "Defendants" or "Wyndham") is a corporation formed in Delaware and operating in the State of Tennessee, with its principal office at 6277 Sea Harbor Drive, Orlando, FL 32821, and a registered agent, Corporate Creations Network Inc., 205 Powell Place, Brentwood, TN 37027. Developer's SOS control number is 000045299.

4.      Defendants Wyndham Vacation Ownership, Inc. (hereinafter referred to as "WVO," "Developer" or "Defendants" or "Wyndham") is a corporation formed in Delaware and operating in the State of Tennessee, with its principal office of business at 6277 Sea Harbor Drive, Orlando, FL 32821-8043, and a registered agent, Corporate Creations Network Inc., 205 Powell Place, Brentwood, TN 37027-7522. At all times relevant to this lawsuit, Developer operated Wyndham Vacation Ownership, Inc., located at 6277 Sea Harbor Drive, Orlando, FL 32821-8043. Developer's SOS control number is 000491614.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 excluding interest and costs. The Plaintiff has paid approximately $200,000 to Defendants in timeshare related costs.

6.      This Court has jurisdiction and venue over this Complaint pursuant as a substantial part of the events or omissions giving rise to this cause of action accrued in Davidson County, Tennessee, which is located within this district. Moreover, the timeshare contract or agreement which is the subject matter of this lawsuit was executed at WVO, WVR and WYND's place of business in Davidson County, Tennessee.

7.      This Court has jurisdiction and venue over this Complaint as each and every Defendant purposely availed themselves of the privilege of transacting business in Tennessee, within this

district. Specifically, the WVO, WVR and WYND negotiated and executed at least one agreement with the Plaintiff at the WVO, WVR and WYND's place of business within this district in Nashville, Tennessee.

8.      Jurisdiction is proper in this court because:

    a.  WVO, WVR and WYND transacted business with Plaintiff within this district.

    b.  The acts and omissions made the subject of this Complaint occurred within this district.

    c.  WVO, WVR and WYND have "continuous and systematic" contacts with this district sufficient to establish personal jurisdiction.

    d.  In addition, WVR owns and/or operates at least four (4) timeshare properties and other resorts located in Tennessee (Wyndham Nashville, Wyndham Resort at Fairfield Glade, Wyndham Smoky Mountains and Wyndham Vacation Resorts Great Smoky Mountains Lodge).

    e.  WVO, WVR and WYND have several offices located in Tennessee, including offices in Sevierville, Crossville (Fairfield Glade), and Nashville, Tennessee.

    f.   WVO, WVR and WYND conduct large scale marketing and sales activities within this district and within the State of Tennessee, including but not limited to direct mail, email, telemarketing, internet distribution channels, travel agencies and other partners.

    g.  WVO, WVR and WYND market and sell their products and services directly to the Plaintiff and other Tennessee residents using the internet.  Wyndham's 2013 Annual Report (10k) filed this year states that, "Given the increasing interest of our members and rental customers to transact on the Internet, we invest and will continue to invest in cutting edge and innovative online technologies to ensure that our members and rental customers have access to similar information and services online that we provide

through our call centers." Wyndham Worldwide Corporation's 2013 Annual Report, p. 20, Section entitled "Internet."

h. WVO, WVR and WYND marketed and sold Vacation Ownership Interests ("VOIs") to the Plaintiff within this district.

i. Wyndham timeshares contains a collection of real property known as component sites.

j. Several of these component sites are physically located in Davidson County, Tennessee, therefore jurisdiction and venue are appropriate with this Honorable Court.

k. The Wyndham Defendants, WVO, WVR and WYND, are contractually obligated to render services at Wyndham component sites, including the component site located in Davidson County, Tennessee.

l. Plaintiff was damaged at this location in Davidson County, Tennessee located within this district.

m. Plaintiff has the right to use facilities in the Tennessee component sites which are located within this district.

n. Plaintiff has the right to obtain reservations at the component sites located in Tennessee which are located in this district.

o. Plaintiff has the right to rent to 3rd parties the facilities at the component sites in Tennessee which are located within this district.

p. WVO, WVR and WYND have employees and/ or agents that work in Tennessee at the various component sites.

q. Plaintiff has the right to use, possess and enjoy the component sites located in Tennessee located within this district.

r. WVR filed several Tennessee Timeshare Public Offering Statements with the Tennessee Real Estate Commission and annually submits renewal applications to the

4

Commission including payment of renewal fees using a WYND, WVR or WVO check and has agreed to be regulated by the Tennessee Real Estate Commission.

s. Plaintiff purchased Wyndham timeshares and was induced into signing timeshare documents in this district.

t. Plaintiff purchased Wyndham timeshare resort vacation units actually located at Wyndham resort properties located in Tennessee within this district.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claim described herein occurred within this judicial district.

10. Any purported forum selection clause or choice of law provision Plaintiff allegedly agreed to is invalid, to the extent that the contract at issue in this case, and each portion thereof, was fraudulently induced, as well as each transaction Plaintiff has ever had with WVO, WVR and WYND. Specifically, in Tennessee, "fraud in the underlying transaction renders a contract clause, such as the forum selection clause at issue here, unenforceable." See *Lamb v. Megaflight,* 26 S.W.3d 627 (Tenn. Ct. App. 2000).

11. Since the Plaintiff is seeking rescission of the contract at issue in this case pursuant to the Tennessee Time-share Act of 1981, and Tennessee common law, and since Plaintiff entered into at least one of these contracts in Davidson County, Tennessee, jurisdiction and venue are proper in this judicial district, irrespective of any statements to the contrary in the fraudulently induced documents.

12. The Plaintiff would not have entered into any portions of their contracts, including the forum selection clause, had it not been for the misrepresentations, duress, and/or abuse of economic power, and the unconscionability of the entire agreement.

5

## FACTS

**Defendants**

13.    WVR is part of WVO, one of the world's largest timeshare companies.

14.    During fiscal 2016 Wyndham's revenue was $5.6 billion.

15.    WVR markets, sells and finances Vacation Ownership Interests (VOIs), provides property management services to property owners' associations, and develops vacation ownership resorts.

16.    WVO, a member of WWO's (now WYND) family of companies, is one of the world's largest vacation ownership business, as measured by the number of vacation ownership resorts, individual vacation ownership units, and owners of VOIs.

17.    WVO develops, markets and sells VOIs, provides consumer financing to owners, and manages properties through its three primary consumer brands: Wyndham Vacation Resorts, WorldMark by Wyndham, and Wyndham Vacation Resorts Asia Pacific.

18.    WVO made and/or serviced loans made to the Plaintiff in the course of WVO, WVR and WYND selling timeshares to the Plaintiff.

19.    Although separate corporations, all Defendants, WVR, WVO and WYND, engage in uniform and common operations related to the ownership and operation of vacation ownership resorts and the marketing and sale of vacation ownership interests.

20.    At all times herein referenced, each of the Defendants, WVR, WVO and WYND, was the agent, servant, partner, aider and abettor, co-conspirator and/or joint venturer of each of the other Defendants, WVR, WVO and WYND.  At all times they operated and acted within the purpose and scope of said agency, service, employment, partnership, conspiracy and/or joint venture and rendered substantial assistance and encouragement to the other Defendants, WVR, WVO and WYND, knowing that their collective conduct constituted a fraudulent scheme and a breach of duty owed to each and every Plaintiff.

6

21.     At all times herein referenced, Defendants, WVR, WVO and WYND, and each of them, were fully informed of the actions of their agents and employees based on Defendants, WVR, WVO and WYND's fraudulent scheme, and thereafter Defendants, WVR, WVO and WYND. Each of them rewarded those actions and no officer, director or managing agent of any Defendants repudiated those actions on behalf of any Defendants.

22.     There exists and, at all times mentioned herein, there existed a unity of interest in ownership between all Defendants, WVR, WVO and WYND, such that any individuality and separateness between the Defendants has ceased.  These Defendants, WVR, WVO and WYND, and each of them are the alter ego of the other Defendants and exerted control over those Defendants. As such WVR, the subsidiary of WVO, is the mere instrumentality of WVO so as to allow WVO, through its organization and use of WVR, to be engaged in the improper conduct described herein. Additionally, WVO, the subsidiary of WYND, is the mere instrumentality of WYND so as to allow WYND, through its organization and use of WVO, to be engaged in the improper conduct described herein. Adherence to the fiction of the separate existence of these Defendants as entities distinct from the other Defendants will permit an abuse of the corporate privilege and would sanction a fraud and/or would promote injustice.

## FACTS COMMON TO PLAINTIFF'S INTERACTIONS

### Common Participation in Scheme to Defraud

23.     Plaintiff avers, upon information and belief that the Wyndham Defendants, WVO, WVR and WYND, through their employees through agents, including Melanie Aulich, Brandon Haynes, as well as, other employees such as agents, officers, managers, etc., have created a common scheme and practice to defraud and misrepresent material facts and/or omissions to would-be timeshare purchasers and current owners.

7

24.    It is through the cooperation and planning of the individuals listed above that the overall scheme is carried out and completed.

25.    The scheme is put into place long before the would-be purchaser is encountered and in fact starts when a new employee is hired.

26.    After the initial training period is completed, a new sales representative is assigned a sales center job. From the beginning, at the sales center, the new representative is taught to forget everything they learned in their training class.

27.    On-the-job training starts at that point and the new hire is trained on how the sales process really works.

28.    This on-the-job training program is sanctioned by, participated in, and designed by employees, corporate officers, managers, quality assurance representatives, podium presenters, sales meeting schedulers, and others.

29.    Many of these employees receive additional compensation or bonuses as a result of timeshare sales and are therefore encouraged to keep participating in this scheme.

30.    Other of WVO, WVR and WYND's agents and employees are basically bullied into going along with the scheme for fear of losing their employment if they were to refuse.

31.    The scheme begins with getting a family into a sales presentation. This is usually done by offering a gift or telling an existing owner it is a mandatory "owner update meeting," both of which are deceitful tactics to get a person to unwittingly agree to attend a long high-pressure sales presentation.

32.    Although the time of these presentations is often represented to be 45 to 90 minutes long, these presentations often go on for many hours.

33.    Once a person is in the sales meeting, it is common place for sales agents to violate the applicable timeshare statutes.

34.     For example, a false sense of urgency is often created by telling the person that an offer is good for that day only.

35.     Some sales agents tell timeshare owners there is a "decline" code on their account, meaning the owners allegedly "declined" some special offer, when in reality, there was no special offer ever made to the timeshare owner, and this is just a trick or contrivance to create a fear of missing out in the mind of the owners.

36.     The timeshare is often represented as a good investment.

37.     Owners are often told the timeshare can be rented for a profit or to cover monthly maintenance fees.

38.     Persons are also often told that reservations can be obtained at various different resorts while knowing reservations for owners are greatly restricted.

39.     These violations of various statutes are done by the sales representatives and done with the full knowledge and encouragement of the supervisors, managers, and officers.

40.     If the person agrees to purchase, "closing" is completed by a quality assurance representative. The stated purpose of this is to protect the buyer from fraud but in actuality this is another part of the fraudulent scheme.

41.     The quality assurance ("QA") employees, know the process and questions to ask to make sure the buyer does not state something that would cause the deal not to close. In fact, it is common for the buyer to be coached before the closing on the "correct" answers to the QA's questions.

42.     Even though the purchasers are told and promised many things by the sales representative, purchasers are told not to repeat these to the QA representative, or the deal would be stopped.

43.     In the actual closing, buyers are shown and must sign dozens of documents without sufficient time to review and understand them.

44.     Often time the buyer is required to sign documents indicating sales representatives did not say the misleading things detailed above. However, this is just a transparent attempt for WVO, WVR and WYND to insulate themselves from liability.

45.     Further, the only part of the entire process that is recorded is the closing. The sales presentation is not recorded in a further attempt by WVO, WVR and WYND to insulate themselves from liability and to make sure there is no record of the violations of law occurring by the sales agents.

46.     This scheme indicated in the preceding paragraphs was the same one encountered by the Plaintiff, which started with the presentation scheduler and ran all the way to the QA representative which were sanctioned by WVO, WVR and WYND's managers and officers, including Melanie Aulich and Brandon Haynes.

47.     The majority of these employees involved in this common scheme are compensated through a bonus and/or commission method based on sales, including Melanie Aulich and Brandon Haynes, who encouraged such fraudulent, unlawful, and scheming practices.

48.     As a result of their participation in the unlawful scheme, each individual is jointly and severally liable for the damages suffered by the Plaintiff.


**The Sales Process**

49.     Plaintiff was told that she was buying an investment, by the salespersons, but her ownership with WVO, WVR and WYND turned into a financial drain, hardship and emotionally upsetting experience.

50.     Wyndham timeshare owners, including the Plaintiff are coerced, forced, and/or required to attend "owner update" or other meetings while they are on vacation at WVO, WVR and WYND

resorts that are intended for no purpose other than to manipulate and pressure the owners to buy additional timeshare points.

51.     Such high pressure by WVO, WVR and WYND, through their agents, including, but not limited to Melanie Aulich and Brandon Haynes often confused the Plaintiff, causing her to misunderstand what she was purchasing, what she was trading, and the actual terms and conditions of the purchase.

52.     Plaintiff and other similarly situated timeshare owners end up owning more points than they can use, because after the initial purchase, they are told each time they vacation that they had to attend an owner "update" meeting, which everyone is led to believe is mandatory. For example, often you cannot get a parking pass unless you agree to attend a sales presentation. These updates are supposed to last 45 minutes, but in reality, they usually end up being a 4-5 hour high pressure sales presentation.

53.     During the multi hour-long, high-pressure sales presentations, Plaintiff was not allowed to leave, causing confusion and misunderstanding regarding the nature of what the Plaintiff was purchasing, the actual terms and conditions of the timeshare purchases, the value of Plaintiff's timeshares (being traded or purchased), and the authority of Aulich and Haynes, to negotiate the terms of the timeshare transactions.

54.     Consequently, WVO, WVR, and WYND through their agents, Aulich, Haynes and others, made material, false statements upon which the Plaintiff relied in deciding to purchase Wyndham timeshares, and then misleading her into buying additional largely worthless timeshare points without actually offering anything of value in return.

55.     WVO, WVR, and WYND engaged in a variety of other deceptive sales tactics while dealing with the Plaintiff. These deceptive tactics are used company-wide with the knowledge, endorsement and encouragement of senior management.

11

56.     WVO, WVR, WYND's deceptive tactics are part of its corporate philosophy to make every sale at any cost. This corporate philosophy is pervasive and drives the need for the use of these deceitful tactics.

57.     At each meeting, Plaintiff and other similarly situated timeshare owners are told by WVO, WVR, and WYND sales representatives that they need to purchase additional Wyndham timeshare points in order to achieve several of Plaintiff's "goals," including the future sale or use of their existing Wyndham timeshares.

58.     WVO, WVR, and WYND now mostly sell timeshares with a "points" system, rather than a traditional "fixed week" or deed.

59.     With points, there is no limit to the amount of inventory that can be sold, monitored for overuse, and ownership is highly diluted.

60.     During the sales presentations in Nashville, Plaintiff was told numerous false statements by WVO, WVR, and WYND's sales agents, including Melanie Aulich, Brandon Haynes and others, to induce them to purchase the additional Wyndham timeshare points including but not limited to the following:

   a.   Plaintiff had to purchase in order to have lower maintenance fees or so that fees that would not go up.

   b.   Plaintiff was told she could rent the timeshare out for profit. That was not the case. In addition, she was were told that she could rent her points to offset maintenance fees. This was also misleading.

   c.   She was told by numerous Wyndham sales agents that she did not need to worry about the high interest rate financing the purchase through Wyndham, because when she got home she could just refinance with her bank. She found out that was untrue, and she could not, and she was stuck with a high interest rate financing the last purchase, which

12

she would not have made had she known the truth that refinancing would not be an available to her.

    d.  Plaintiff was told she was getting a deal that was good for "one day only" by her sales agent.

61.    Many timeshare owners, including the Plaintiff was concerned about an "exit strategy" to get out of their timeshares and relieving themselves of the never-ending maintenance fees, or to find a way to keep the burden from passing to their heirs.

## Unavailability of Reservations, Unlawful Taking

62.    One of the most common ongoing problems the Plaintiff experienced with her timeshare is the unavailability when trying to make reservations.

63.    However, when resorts and dates are blacked out and unavailable on the Wyndham reservation system, the resorts show availability for the same time on various travel websites.

64.    Upon information and belief, reservations are difficult for Plaintiff and other similarly situated Wyndham timeshare owners because WVO, WVR, and WYND is manipulating the reservation system in order to obtain access to accommodations, reservations, and rooms for its own financial interests and contrary to the interest of the timeshare owners.

65.    WVO, WVR, and WYND will rent these accommodations through various means such as online marketing companies, and keep the revenue for company profit, all the while denying timeshare owners, including Plaintiff access to these reservations.

66.    Furthermore, WVO, WVR, and WYND use the rooms as marketing tools so as to give free or low-cost vacation rentals to potential timeshare purchasers, which also decreases availability of rooms, also denying timeshare owners access to accommodations – accommodations the Plaintiff

and other similarly situated owners have paid for and continue to maintain through yearly maintenance fees.

67.     This is possible because WVO, WVR, and WYND control all aspects of the reservation system, through its association with the FairShare Vacation Plan Use Management Trust, which constitutes an illegal civil conspiracy, since these entities deprive the Plaintiff and other similarly situated timeshare owners of their personal and real property rights.

**The Rental Pitch**

68.     WVO, WVR, and WYND developed ways to entice current owners to buy more timeshare points. WVO, WVR, and WYND created the "Rental Pitch" and trained its sales representatives to use the "Rental Pitch" as a tactic to lure current owners, including Plaintiff, to buy more points.

69.     Each time Plaintiff attended a sales meeting, the WVO, WVR, and WYND's sales agents told them that the timeshares would greatly increase the amount of rental income the Plaintiff would receive because the timeshares being purchased from Wyndham were in very high demand and would bring in more income from rentals of the timeshares.

70.     Plaintiff was told that the VOI would pay for itself in that the amount of rental income Plaintiff would receive would cover the mortgage and maintenance fees by Aulich and Haynes. Salespersons often tell Plaintiff and similarly situated timeshare owners they could rent their timeshare to offset some or most of their costs.

71.     In addition, WVO, WVR, and WYND control inventory allotment. The biggest and best rooms at the nicest resorts are in greater demand and can be rented for high prices. WVO, WVR, and WYND has control over inventory allotted to Wyndham itself.

14

72.     WVO, WVR, and WYND deliberately restricts the quantity and quality of the inventory available to rent, so the average Owner does not get a big price on their rental. This is not ever explained or told to Owners, and it was never explained to Plaintiff.

73.     Plaintiff and other similarly situated owners are also not told they will be competing with WVO, WVR, and WYND on the open market who rents out the resorts on the Internet on sites like Orbitz, Hotels.com, and Hotwire.

74.     WVO, WVR, and WYND have this policy against the Rental Pitch because it is inherently misleading, gives false assurances, is a high-pressure sales tactic that lures people into buying more than they can afford, and is a violation of Timeshare laws in many states.

75.     However, WVO, WVR, and WYND's deceptive tactic is to have Plaintiff and similarly situated timeshare owners then sign a document saying she was not told or promised rental as part of the sales presentation, when in reality, it is a pitch Plaintiff got with each purchase, and it is routinely done by Wyndham agents including Aulich and Haynes.

**The Closing Process Is Part of the Scam**

76.     It is the common practice and scheme of WVO, WVR, and WYND, through its agents, including Aulich and Haynes to purposely make misrepresentations during the sales presentation. This is done with the full knowledge of WVO, WVR, and WYND and the management.

77.     However, in order to limit their liability, WVO, WVR, and WYND then, during the "closing" process, which includes signing documents, deliberately and fraudulently attempt to get Plaintiff to sign statements that disavow that such fraudulent statements were made by the sales agents.

78.     This is a common scheme involving multiple employees and agents of WVO, WVR, and WYND, constituting a civil conspiracy.

15

79.     In other words, WVO, WVR, and WYND know the misleading or false statements the sales agents will be using to con or induce sales to Plaintiff and other similarly situated timeshare owners or potential owners, but then have people sign something during closing saying they were not told false statements or that violations of the Tennessee Timeshare Act occurred.

80.     Moreover, each timeshare contract closing required the Plaintiff to sign and/or initial numerous separate contracts or other documents often numbering up to 30 separate agreements and/or documents, and some documents numbering over 700 pages.

81.     WVO, WVR, and WYND required the Plaintiff to sign numerous contracts or documents that internally referred to separate additional documents that were never presented to or signed by the Plaintiff or were hundreds of pages long, and could not possibly be reviewed in one sitting, and especially without a lawyer. For example, Plaintiff was forced to sign documents stating that she had received them, but in reality, there was no way for Plaintiff to review such complicated and lengthy legal documents.

82.     Plaintiff was never afforded an opportunity to seek legal or accounting advice before signing any of the timeshare contracts and/or documents, which is shocking to the conscience, when the Plaintiff was going into tens of thousands of dollars of long-term debt, at high interest rates, with little or no aftermarket re-sale value.

83.     Plaintiff was not allowed to read through the Wyndham timeshare contracts and other documents. In addition, Plaintiff was on vacation, but was told she would only spend "45 minutes" at their owner's update meeting, but it turned into hours. To review all the documents, Plaintiff would have spent countless hours of precious vacation time having to look at all the documentation at that time.

84.     Plaintiff often signed the Wyndham timeshare contracts without being given an opportunity to read them because of being tired, hungry, pressured, harassed, and/or bullied into signing.

16

85.     WVO, WVR, and WYND, through their agents, rushed the Plaintiff through the execution of each timeshare contract and other documents.

86.     The timeshares the Plaintiff purchased were represented by WVO, WVR, and WYND's employees and/or agents and/or representatives, including Aulich and Haynes, as sound financial investments, stating that because the unit was prime real estate, the timeshare would increase in value.

87.     WVR, WVO and WYND's agents  rushed Plaintiff through the contract closing process in order to hide certain material terms and conditions of the timeshare contracts, including that the Plaintiff may or may not be trading one or more timeshares to purchase additional timeshares, or consolidating all of her Wyndham timeshare properties and explaining to her the value/credits/trade-in she would be receiving, causing significant confusion and misunderstanding on the part of the Plaintiff.

88.     No individuals at WVR, WVO and WYND read the documents out loud to the Plaintiff and the federal legal requirements regarding lending were not met as they were not gone over by line item.


**Consumer Affairs Complaints- Notice to WVR, WVO and WYND**

89.     WVR, WVO and WYND engage in a pattern, practice, habit and routine of racketeering through deceptive sales practices, high pressure sales, and exploitation of the elderly.

90.     Attorneys General across the nation have had hundreds of complaints filed by Wyndham timeshare owners, including Florida, Tennessee, Missouri, Wisconsin and California, and consent orders have been lodged against Wyndham for their practices, and settlements have even been paid out to victims, such as in Wisconsin.

91.    WVR, WVO and WYND's sales agents are allowed to continue to use deceptive, high pressure, and misleading sales tactics, and even ones that violate their own internal rules.

92.    Sales Compliance Reports are prepared quarterly, and they show violations of Wyndham's sales policies broken down by individual salespersons, including violations for pitching rent.

93.    These reports are categorized by individual salespersons and show how many violations each person committed and the nature of each violation.

94.    These reports show individuals with 30, 40, and even as high as 57 cited violations, including pitching rent violations. WVR, WVO and WYND did not terminate these sales representatives despite these high number of violations.

95.    These complaints were filed, and Wyndham was sanctioned, all before the Plaintiff was deceived by the salespeople she encountered, because WVR, WVO and WYND refuses to put a stop to these practices, as they would rather continue making money than clean up their act.

96.    According to the Better Business Bureau, their files indicate that Wyndham Vacation Ownership, Inc. has a pattern of complaints concerning misrepresentation in selling practices. Consumer complaints report that the verbal representations are inconsistent with the written agreement. According to complaints, claims include:

(a)    Representations that the purchase is an "investment" and the same as "real estate" in that it will increase in value.

(b)    Owners report mandatory meetings that they are led to believe are to introduce new features and benefits but result in a sales presentation to purchase or upgrade their points.

(c)    In some instances, owners are encouraged to complete a survey or questionnaire which results in another sales presentation to purchase additional points.

97.     Plaintiff was the victim of all these deceptive practices. WVR, WVO and WYND's sales agents intentionally misrepresented numerous material terms of the transactions in order to induce the Plaintiff to upgrade, and trade or purchase additional Wyndham timeshare properties, as stated above.

98.     WVR, WVO and WYND's sales agents would often conceal from or fail to disclose to the Plaintiff certain significant provisions in the timeshare supplemental contracts, including but not limited to the Settlement Statement.

99.     WVR, WVO and WYND's sales agents would often conceal from or fail to disclose to the Plaintiff the Public Offering Statement required under the State's Time-share Act, or force Plaintiff to sign something saying she had received it, knowing that no one could possible review a document that was hundreds of pages long in one sitting or without professional advice about its contents.

100.    WVR, WVO and WYND's sales agents concealed from or failed to disclose to the Plaintiff certain significant provisions in the timeshare supplemental contracts, including but not limited to material financing terms such as the interest rate, term of loan, total interest, or total of payments.

101.    WVR, WVO and WYND required Plaintiff to sign numerous contracts or documents that internally referred to separate additional documents that were never presented to or signed by Plaintiff.

102.    WVR, WVO and WYND strongly encouraged Plaintiff to use Wyndham Rewards Program with Wyndham Card Services, so to lure the Plaintiff into a false hope that these points would be valuable or offset the high payments he was getting into.

103.    WVR, WVO and WYND sales agents failed to properly disclose, or actually lied to the Plaintiff about the statutory rescission or "cooling off period" giving Plaintiff the right to cancel within a certain number of days after the purchase.

**Psychological Tactics**

104.     WVR, WVO and WYND's sales agents, including Aulich and Haynes, told Plaintiff she was getting special discounted pricing to upgrade or purchase additional timeshares and/or timeshare points.

105.     WVR, WVO and WYND's sales agents, including Aulich and Haynes, offered Plaintiff special reduced pricing and/or unique favorable terms on certain timeshare contracts ("Special Offers"), but then represented that such offers had expired or were no longer available.

106.     Most of the time, WVR, WVO and WYND's sales agents, including Aulich and Haynes, told Plaintiff that certain Special Offers were only valid that day, and that if Plaintiff declined the Special Offer, she would never again be allowed to participate in the Special Offer.

107.     WVR, WVO and WYND's sales agents, including Aulich and Haynes, told Plaintiff she was getting a one-time offer, and sometimes the "Manager" would be brought into the meeting to tell her that this was the best deal they had ever done for anyone.

108.     When Plaintiff said no to one sales agent, another would be brought in to try different tactics and to continue to work her over into breaking down her resolve and convincing her to make a purchase she did not want or need.

109.     In addition, WVR, WVO and WYND's sales agents, including Aulich and Haynes, made numerous intentional or negligent misrepresentations to the Plaintiff designed by WVR, WVO and WYND, to create a false sense of urgency, pressuring the Plaintiff to purchase new or additional timeshares. For example, she was told by WVR, WVO and WYND's sales agents, including Aulich and Haynes, that new programs were being introduced but Plaintiff would not be able to use her points unless she enrolled.

110.     Plaintiff was concerned about the high-interest rates on loans, often in the teens, but when she raised such concerns, she was intentionally or negligently told by WVR, WVO and WYND's

sales agents, including Aulich and Haynes, that she could take a timeshare deed to her bank, mortgage company, credit union or other financial institution to refinance the loan made by Wyndham to the Plaintiff at a much lower interest rate. This is a falsehood.

## Retaliation for Making A Complaint

111. On February 9, 2017 counsel for the WVR, WVO and WYND, notified the Plaintiff through counsel that her timeshare accounts were being frozen and therefore as a consequence Plaintiff would not be able to use any current reservations or make any additional reservations indefinitely. (See **Exhibit A**).

112. Moreover, any clients they had in the future that sent Wyndham a "demand letter" detailing their dissatisfaction with Wyndham and asking for a refund would be treated the same way.

113. On February 17, 2017 Plaintiff's counsel responded to WVR, WVO and WYND's letter asking that Plaintiff's accounts not be frozen and for further assurances that the Plaintiff's accounts would in fact not be frozen. (See **Exhibit B**).

## Facts Specific to Plaintiff Transactions

**Plaintiff Purchased in Davidson County, Tennessee on January 17, 2015, contract number 00019-1500768 and/or August 22, 2015.**

114. Plaintiff estimates through the years she has paid WVR, WVO and WYND at least $200,000.00 including mortgages, maintenance fees and interest however the exact amounts are unknown but in the possession of the Wyndham Defendants.

21

115.    While vacationing in Nashville, Tennessee on  January 17, 2015 and/or August 22, 2015, the Plaintiff was invited to what was classified by WVR, WVO and WYND's sales agents as a short presentation 'owner update meeting" that would last no longer than 90 minutes to show the new program features but this turned out to be a multi-hour high-pressure sales presentation.

116.    At the presentation, Plaintiff encountered WVR, WVO and WYND's sales agents, including Aulich and Haynes.

117.    A Wyndham sales agent, upon information and belief,  Aulich and/ or Haynes, told Plaintiff that the previous purchase was going to cost her a lot of money and that an additional purchase would fix all of the problems.

118.    A Wyndham sales agent, upon information and belief, Aulich and/ or Haynes, told Plaintiff that she would be able to refinance her timeshare purchase at a much lower rate, even though they knew this was not true.

119.    A Wyndham sales agent, upon information and belief, Aulich and/ or Haynes, told Plaintiff that her maintenance fees would go down and stabilize when in actuality the purchase caused them to go up.

120.    During the sales presentation Aulich and Haynes gave the Plaintiff their phone numbers and told her that they would assist her in using her timeshare in the future even though they had no intention of doing so.

121.    Aulich and Haynes stated or affirmed to the Plaintiff that the deal Wyndham was offering was good for that day only, even though they knew this not to be true.

122.    Aulich and Haynes stated or affirmed to the Plaintiff that the timeshare could later be sold for a profit, even though they knew this not to be true.

123.    Aulich and Haynes told Plaintiff that she could rent out the timeshare to cover all of the costs even though they knew this was not true.

124.    Aulich and Haynes also greatly misrepresented how useful using points to buy airline tickets and rental cars was.

125.    Aulich and Haynes told the Plaintiff that they did not work on commission and that they got paid whether or not she purchased so it did not matter to them whether she bought, even though this is not true and in fact Aulich and Haynes did work on commission.

126.    Aulich and Haynes also signed up the Plaintiff for the PayPal Bill Me Later credit plan without her knowledge.

127.    Aulich and Haynes also told the Plaintiff that she would be able to travel to every Wyndham location and she would be guaranteed reservations at Bonnet Creek up to 60 days prior to the date she wished to go.

128.    Aulich and Haynes told the Plaintiff to lie to the Wyndham closing agents when asked why she was purchasing.

129.    Aulich and Haynes made these representations knowing the Plaintiff would be tricked into signing documents that often contradicted the sales agents' statements.

130.    Plaintiff relied on each of these representations related above to her detriment when she purchased a timeshare on that date.

## COUNT I

### (FRAUD - INTENTIONAL MISREPRESENTATION)
### (WYND, WVO, WVR)

131.    Plaintiff Darla Bell repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

23

132.    As detailed herein above, in paragraphs above WYND, WVO and WVR made numerous material false representations to the Plaintiff including but not limited to timeshare and timeshare contract terms and conditions, timeshare resale, rental, exchange, and other benefits or provisions of the timeshares purchased by the Plaintiff, and the parties' access, capabilities, maintenance and administration of the timeshares.

133.    Ms. Bell recalls that the sales agents on January 17, 2015 or August 22, 2015 was Aulich and Haynes.

134.    WVO and WVR's agents who were present at the closing did not go over the closing line by line, as is required by law. The closing process is part of the fraud and WYND, WVO and WVR knows that and encourages a closing that is confusing, fast, and without any legal or accounting advice to the Plaintiff.

135.    Aulich and Haynes' false representations were intended to provide a measure of security to the Plaintiff that buying more points and upgrading was a viable investment.

136.    At the time of the sale to Plaintiff, WYND, WVO and WVR's agents, Aulich and Haynes, knew that the representations were false and/or were misleading, in order for WYND, WVO and WVR to induce Plaintiff into making purchases.

137.    WYND, WVO and WVR and their agents, Aulich and Haynes, engaged in making false statements to induce the Plaintiff to buy, in order to enrich themselves.

138.    WYND, WVO and WVR's agents Aulich and Haynes knowing misrepresentations have harmed Plaintiff, resulting in the loss of her entire investment plus mental pain and suffering.

139.    The Plaintiff was induced to purchase the timeshares at issue as a result of WYND, WVO and WVR's agents, Aulich and Haynes false and misleading representations.

140.    These representations made by Aulich and Haynes were false, and WYND, WVO and WVR knew or should have known they were false when making such misrepresentations.

24

141.    The Plaintiff justifiably relied upon Aulich and Haynes and WYND, WVO and WVR's false representations to her detriment.

142.    WYND, WVO and WVR made these misrepresentations intentionally, recklessly, and willfully.

143.    WYND, WVO and WVR's agents, Aulich and Haynes, made the misrepresentations in order to induce the Plaintiff to purchase timeshares, upgrades, programs, memberships and points.

144.    WYND, WVO and WVR's agents, Aulich and Haynes made the misrepresentations in order to gain a financial benefit.

145.    Sometime after the purchase, the Plaintiff discovered the full extent of the falsity of these representations and the true intent of the WYND, WVO and WVR.

146.    Had the Plaintiff been informed of the truth she would never have entered any contract with WYND, WVR or WVO, she would never have closed the sale, she would never have purchased the time- share interest, and she would absolutely never have paid any purchase funds.

147.    WYND, WVO and WVR have knowingly engaged in a wide-spread, company-wide scheme of making false promises, omissions, and high-pressure sales tactics to make sales at all costs, in order to enrich themselves, and they have been sued hundreds of times in court across America, and hundreds of complaints have been filed all across the nation for the exact same allegations Plaintiff is making here.

148.    The transaction documentation contains a provision that provides that the Plaintiff is not relying on any spoken statements by the sales staff for her decision to make the purchase, when in reality the Plaintiff is relying *solely* on the spoken statements made by the sales staff, because the entire sales presentation was made orally.

25

149.     The Plaintiff has suffered damages as a result of the action of WYND, WVO and WVR and Aulich and Haynes by making the statements set forth herein.

150.      During all times, Aulich and Haynes were acting as a servant or employee of  WYND, WVO and WVR, was engaged in the employer's business, and was acting within the scope of their employment, and WYND, WVO and WVR is liable under *respondeat superior*.

151.     WHEREFORE, premises considered, Plaintiff seeks compensatory and punitive damages plus interest and costs. The Plaintiff prays for such other and further relief this Court deems appropriate.

## COUNT II

## (FRAUD - FRAUD IN THE INDUCEMENT)
## (WYND, WVO, WVR)

152.     The Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

153.     Aulich and Haynes, and WYND, WVO and WVR's misrepresentations, set forth in Count I above and all the facts listed in paragraphs above, induced Plaintiff to purchase the VOIs at issue in this Complaint.

154.     Aulich and Haynes represented to Plaintiff that she needed to buy more points, and that they would be her personal representative.

155.     WYND, WVO and WVR sales agents, Aulich and Haynes, falsely represented to the Plaintiff that the timeshares being purchased by the Plaintiff has sponsorship, approval, characteristics, uses, benefits or quantities that they did not have.

156.     The Plaintiff was falsely told by the sales agents, including Aulich and Haynes, that the timeshares purchased would be a great investment.

157.     The Plaintiff was falsely told by WYND, WVO and WVR sales agents, including Aulich

and Haynes, that the timeshares purchased could be sold for a profit. WYND, WVO and WVR made false or misleading statements of fact concerning the reasons for, existence of, or amounts of timeshare price reductions for timeshares being sold to the Plaintiff.

158.    Additionally, the Plaintiff was falsely told by Aulich and Haynes that one or more timeshares she was being sold were priced well below fair market value.

159.    Aulich and Haynes represented that the timeshares being sold to the Plaintiff had benefits that the Plaintiff did not currently have with her existing timeshare, such as better reservation-making power, the ability to be rented, and that the deal she was getting was a special offer good for that day only.

160.    Aulich and Haynes made false statements detailed above to induce the Plaintiff to buy a timeshare.

161.    WYND, WVO and WVR advertised the timeshares and made timeshare presentations to the Plaintiff with ulterior intents to sell them timeshares contrary to the described timeshares in the advertisements and presentations.

162.    WYND, WVO and WVR advertised the timeshares sold to the Plaintiff with intent not to sell them as advertised.

163.    The Plaintiff was falsely told by WYND, WVO and WVR that the meetings she would be attending were merely to present owners with new amenities to their current ownership, when the meetings were always intended to sell the owners additional or new timeshares.

164.    WYND, WVO and WVR's conduct relating to their sales presentations constituted a "bait and switch" tactic "…advertising items to lure consumer, then inducing the consumers to buy different and more expensive items…" in violation of Tennessee law. Tenn. Code Ann. § 47-18-103(1).

165.    The Plaintiff reasonably relied on these misrepresentations to her detriment.

27

166. The Plaintiff has suffered damages as a result.

167. The Plaintiff just recently discovered the full extent of the falsity of these representations and the true intent of WYND, WVO and WVR.

168. WHEREFORE, premises considered, Plaintiff seeks compensatory and punitive damages plus interest and costs. The Plaintiff prays for such other and further relief this Court deems appropriate.

### COUNT III
### (CONSTRUCTIVE FRAUD)

**(WVR, WVO, WYND)**

169. The Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

170. The Plaintiff and WYND, WVO and WVR entered into several contracts for the purchase of timeshares as described above. (*See,* Exhibit C)

171. Defendants had a legal and/or equitable duty to Plaintiff to provide accurate and complete information either orally or in written communications, including during sales presentations, in marketing materials used during the podium presentation, marketing materials used during the sales presentation at the tables, or any other documents presented to the Plaintiff at any time during her purchase from WYND, WVO and WVR, including closing documents.

172. WYND, WVO and WVR, including all their sales agents, owed Plaintiff a duty due to the fiduciary relationship involved in the sale of a timeshare, because a Real Estate agent owes a duty to all parties pursuant to T.C.A. 62-13-403(4), to provide services to each party to the transaction with honesty and good faith.

28

173. In addition to the duties imposed on contracting parties by the express terms of their agreement, the law implies in every contract a duty of good faith and fair dealing.

174. The Plaintiff justifiably placed her trust in WYND, WVO and WVR and their agents, including the sales agents named herein, and other yet to be discovered sales agents and employees of WYND, WVO and WVR who came in contact with the Plaintiff during her purchase of a timeshare.

175. The Plaintiff put her trust and confidence in WYND, WVO and WVR and their sales agents, and other employees and personnel, given their reputations, superior skill in timeshare transactions, knowledge, training, and expertise.

176. WYND, WVO and WVR further were under a duty to exercise reasonable care to disclose to Plaintiff, before the transactions described herein were consummated, facts basic to the transaction.

177. WYND, WVO and WVR, through their sales agents named herein, managing brokers, and other employees knew that the Plaintiff was about to enter into a timeshare purchase due to a mistake, and/or misrepresentation, and/or fraud, and that Plaintiff, because of the relationship between them reasonably expected a disclosure of these facts.

178. Such facts that were not disclosed were:

   a) The material facts affecting the timeshare's value, known to WYND, WVO and WVR but not to Plaintiff, such as the lack of aftermarket value, inability to refinance the timeshare, that "equity" paid in is has no value outside the Wyndham system, and even then, little to no money would be given for "buy back" of the timeshare, if Wyndham even chose to exercise its right of first refusal

   b) That the timeshare was not an investment of any kind

   c) That the timeshare could not be rented, or would be very difficult to rent, or that the return on rental was much lower than anything stated

   d) That maintenance fees would increase, or would increase at a higher rate than

stated

e) That there was no special offer for the price of points offered on any given purchase Plaintiff was entering into

f) That the timeshare was subject to dilution and other rule changes

179. These were all basic facts assumed by the parties as a basis for the transaction itself and were an important part of the substance of what was bargained for.

180. Without the benefit of the undisclosed information, said WYND, WVO and WVR, and all sales agents, having a legal and/or equitable duty to disclose, Plaintiff reasonably acted to her detriment.

181. The Plaintiff would not have purchased the timeshares had the undisclosed information been disclosed.

182. The Plaintiff have been damaged as a result of the WYND, WVO and WVR's undisclosed information.

183. The Plaintiff recently discovered, after her purchase, these material facts were suppressed and concealed by WYND, WVO and WVR.

184. Wherefore, premises considered, Plaintiff seeks compensatory and punitive damages plus interest and costs, and rescission of the contracts at issue here, as well as such other and further relief as this Court deems appropriate.

## COUNT IV (BREACH OF CONTRACT)

### (WVR)

185. The Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

186. The Plaintiff and WVR entered into several contracts described above. They are in the possession of the WVR. (*See*, Exhibit C). Other contracts were oral promises, as described above, such as promising to be her personal representative and that they would answer their cell phones. Some terms of the contract are incorporated by reference and are not in the possession of Plaintiff, such as the Trust Agreement, and the Public Offering Statement.

187. These contracts were adhesive in nature, and the Plaintiff was not allowed to negotiate the terms and conditions of these contracts.

188. WVR was to provide certain benefits and services and perform certain obligations under each contract. Some of the contracts were oral, as enumerated herein.

189. These benefits and services are set forth in numerous places, including: a) In the contracts themselves; b) In various ancillary documents and agreements; and c) In membership directories issued each year according to the Wyndham membership program and/or VIP levels.

190. The Plaintiff performed all of her obligations under the contracts.

191. Defendants breached said contracts by failing to provide, changing or eliminating material benefits and services.

192. WVR promised to deliver various services to Plaintiff. Incidental to the purchase of the time-share interest was the purchase of the services necessary to utilize the time-share interest specifically, the booking, reservations, customer service, and support services that would allow the Plaintiff to utilize her interest with Wyndham, and with Wyndham affiliates around the world, such as RCI.

193. However, the WVR failed to provide the services as they had been described. The WVR refused to provide clear answers to Plaintiff basic inquiries about booking and her owner rights. Despite sales people giving the Plaintiff their alleged cell phone numbers to call for assistance

31

in renting or booking, the Plaintiff had her calls and messages avoided and ignored.

194.    Furthermore, WVO and WVR breached said contracts by alerting the attorneys for Plaintiff that all their clients' accounts would be frozen and they no longer would have any access to their timeshare beginning on February 28, 2017. (*See,* Exhibit A)

195.    WVO and WVR stated that any of the clients of their firm who complained about their timeshare with a demand letter would not be able to book with points already paid for, and reservations already made would be cancelled.

196.    On February 17, 2017, Plaintiff counsel sent a letter back to WVO and WVR stating that no account should be frozen and all client wanted to continue to use their already-paid for timeshare until resolution of the disputed purchases could be resolved. (*See,* Exhibit B)

197.    WVO and WVR's statements have now put Plaintiff in limbo over whether she can book vacations, use her points to book vacations or pay maintenance fees, rent her timeshare, or otherwise use the timeshare.

198.    WVO and WVR's February 9, 2017 letter and subsequent lack of assurances or response to Plaintiff's February 17, 2017 letter has made it impossible for the Plaintiff to reasonably exercise her rights under the contracts even if she has apparent ability to do so.

199.     Alternatively, even if the accounts have not been frozen, Plaintiff cannot reasonably attempt to access the property without knowing if and when her rights under the contract might be blocked because of additional monetary loss that could incur such as, travel expenses and alternate lodging among other things.

200.    WVO and WVR letter, which states they will prevent Plaintiff from using their paid-for timeshares, violates the implied covenant of good faith and fair dealing that is inherent in all contracts.

201.    Throughout her ownership, Plaintiff was repeatedly denied reservations when rooms were

32

available, because WVR and WVO were renting them on the open market, such as via internet travel sites, and for marketing purposes, instead of making sure they were available to Plaintiff and other similarly-situated owners, in order to enrich themselves.

202. None of the funds WVR obtained from rental income through the open market or their own marketing purposes were retained for the benefit of the timeshare owners, and/or Plaintiff.

203. In the contract between the parties, paragraph 1 reads in part: "Ownership. Owner is a member of the Association, and is entitled: (a) to use the Points to reserve the use of accommodations in the Club ("Club Accommodations…")

204. In the contract between the parties, paragraph 4 reads in part: "Club Accommodations. Owner shall have access to all existing and future Club Accommodations and the properties within which those Club Accommodations are located ("Club Properties"), as well as all other accommodations owned or operated by or associated with Club, wherever located.

205. WVR breached their contracts with Plaintiff because Plaintiff was denied access to the properties and benefits to which she is entitled under the terms of the contract.

206. These above breaches are continuous violations.

207. Plaintiff was damaged as a result of said breaches.

208. WHEREFORE, premises considered, Plaintiff seeks compensatory and punitive damages plus interest and costs. Plaintiff prays for such other and further relief this Court deems appropriate.

## COUNT V
## (NEGLIGENT MISREPRESENTATION)

### (WYND, WVO, WVR)

209. Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

210.    WYND, WVO and WVR's sales agents and employees as described above, on the dates enumerated to the respective Plaintiff, acting in the course of their employment or service, and motivated by their pecuniary interest in making a commission from selling the Plaintiff a timeshare, either negligently or recklessly supplied false information to the Plaintiff as enumerated above, as a matter of habit, practice and routine, with approval of management and in a culture-wide attitude of "sell at any cost," or known as "TAFT time"[1], said the following:

a.    Plaintiff had to purchase the Club Wyndham Access and Was told that if she traded to new property, maintenance fees would go down or "stabilize".

b.    Multiple salespersons, on the dates of purchase, stated that they were going to be the Plaintiffs' personal representative, the gatekeeper of the account, and take care of Plaintiff forever. Each went as far as to give the Plaintiff their personal cell phone number so they could always be in touch. In reality, they had no intention to do this and never contacted the Plaintiff again

c.    Plaintiff was told she could rent the timeshare out for profit. That was not the case. In addition, she was told that she could rent her points to offset maintenance fees. Salespersons told her that she could rent her timeshare for hundreds of dollars per night. This was also not the case.

d.    Plaintiff specifically purchased because she wanted an exit strategy, and she was told by sales agents that there was a "buy back" of the property if she chose, called Pathways. Sales agents in each transaction told Plaintiff that any points paid for could be bought back for 20% of their price. In reality, there are many conditions on the program, and it is also simply a right of first refusal.

e.    Plaintiff was told she had to purchase additional timeshare points

---

[1] "TAFT time" was something sales managers would say to sales agents as they went to meet with prospective buyers, and it stood for "tell them f**king anything", meaning, say whatever it takes, even falsehoods, in order to make the sale, because managers also got paid a percentage of each sale.

to lower her maintenance fees and that at a certain level her maintenance fees would never increase again. In addition, she was told that by upgrading to more points and getting a better status (Called "VIP") it would increase her "Reservation Power". But Plaintiff found out that that she could not, and she did not have any better success in getting reservations, which was already poor.

f.     Plaintiff was told by sales agents that she had missed out on an invitation that was the best release that ever was on offer but it was only to selected VIP. Plaintiff never received the invite/offer and ironically WYND, WVO and WVR's sales agents went away and got it approved to be honored. There never was an invitation sent to her and it was all a ploy to create a fear of loss/ missing out, which is a high-pressure sales tactic.

g.     That she did not need to worry about the high interest rate of financing the purchase on a PayPal Bill Me later, because when she got home she could just refinance with her bank. That was untrue. She was also told she could cash in points for maintenance fees at a falsified rate of exchange.

h.     Salespersons intentionally hid the fact that they were incentivized in numerous ways to enroll Plaintiff into high interest financing plans such as PayPal Bill Me Later.

i.     Salespersons grossly misrepresented the value of using timeshare points for airline tickets, cruises, car rentals, hotel stays, and entertainment venues.

j.     On at least one occasion, Plaintiff never even received a copy of her contract, so that she was unable to review it or find out the information for rescission if she chose to.

211.    Such false information supplied by WYND, WVR WVO's sales agents and employees was meant to guide and/or manipulate the Plaintiff in making a decision to purchase, exchange, trade or upgrade a timeshare.

212.    WYND, WVO and WVR's sales agents and employees failed to exercise reasonable care in how such information was obtained, or such information was communicated to the Plaintiff.

213.    The Plaintiff was justified in relying on the information being supplied by WYND, WVO

35

and WVR.

214. WYND, WVO and WVR had a duty to follow and enforce its internal sales compliance procedures and to act with reasonably prudent care in the administration of Plaintiffs' vacation ownership points.

230. WYND, WVO and WVR breached this duty by not following and enforcing its internal sales compliance procedures and by making it difficult, if not impossible, for Plaintiff to utilize her points to the fullest extent possible.

231. For example, WYND, WVO and WVR's sales agents are not supposed to make representations regarding the ability to rent and rental income that can be obtained, yet the sales agents told the Plaintiff, as well as similarly-situated timeshare owners, that they can rent out her timeshares and make enough money to cover her maintenance fees.

232. Defendants are not supposed to offer "special deals" and say they are good for that day only, or some other special deal, in violation of Tennessee Timeshare Laws such as T.C.A. 66-32-132, yet WYND, WVO and WVR's sales agents did just that.

233. WYND, WVO and WVR knows that it is engaging in deceptive sales tactics, and often the sales agents told Plaintiff one thing orally, then had her sign a document saying the opposite.

234. The numerous State complaints to Attorneys' General, the Better Business Bureau complaints, and hundreds and/or thousands of lawsuits filed against WYND, WVO and WVR all alleging the very same misrepresentations that happened to Plaintiff, as well as violations of their own Sales Compliance Manual, and psychological tactics to overcome Plaintiffs' ability to say no, prove that WYND, WVO and WVR knew it was making false representations through its agents.

235. As a result of said breaches, Plaintiff suffered damages.

236. WHEREFORE, premises considered, Plaintiff seeks compensatory damages plus interest and costs. Plaintiff prays for such other and further relief this Court deems appropriate.

## COUNT VI (PROMISSORY FRAUD)

### (WYND, WVO, WVR)

237.     Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

238.     WYND, WVO and WVR, its employees and agents intentionally made numerous material misrepresentations to the Plaintiff on the dates and in the manners enumerated above.

239.     These false representations were made knowingly or without belief in their truth, and/or recklessly without regard to their truth or falsity.

240.     WYND, WVO and WVR, its employees and agents made promises to the Plaintiff relating to the future value of the timeshares.

241.     WYND, WVO and WVR, its employees and agents made promises to the Plaintiff relating to how the Plaintiff could use the timeshares in the future, such as telling them VIP or Presidential Reserve status could get her the reservations she wanted without difficulty, which was untrue.

242.     WYND, WVO and WVR, its employees and agents made promises to the Plaintiff relating to WYND, WVO and WVR helping the Plaintiff rent out her timeshares in the future, as well as telling her she could rent to cover maintenance fees or cover the cost of ownership. However, no WYND, WVO and WVR agent ever answered their phone or assisted the Plaintiff in renting out her timeshare.

243.      WYND, WVO and WVR, its employees and agents made promises relating to WYND, WVO and WVR exchanging the Plaintiffs' timeshares and/or timeshare points in the future for vacations, time or use of or at other resorts.

244.      WYND, WVO and WVR, its employees and agents made specific and unambiguous

promises relating to the advantages of upgrading a timeshare and/or purchasing additional points and claiming maintenance fees would be covered if Plaintiff rented out her timeshare.

245.     WYND, WVO and WVR, its employees and agents made specific and unambiguous promises relating to the ability to get out, with the deceptive Pathways Programs, which was sold as a buy-back program but it only a right of first refusal.

246.     The Plaintiff reasonably relied on WYND, WVO and WVR's misrepresentations to her detriment.

247.     At all times WYND, WVO and WVR's employees and agents represented themselves as experts in the field of timeshares, and advised the Plaintiff that she should rely on the representations of the WYND, WVO and WVR employees and agents in making Plaintiffs' decisions to purchase, upgrade, modify, trade and/or sell her timeshares.

248.     WYND, WVO and WVR's misrepresentations related to promises of future action without the present intention to carry out such promises.

249.     As a proximate result, Plaintiff has suffered damages.

250.     WHEREFORE, premises considered, Plaintiff seeks compensatory damages plus interest and costs. Plaintiff prays for such other and further relief this Court deems appropriate.

### COUNT VII
### (VIOLATION OF THE TENNESSEE TIMESHARE ACT)

**(WYND, WVO, WVR)**

251.     Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

252.     At all times relevant to this complaint Melanie Aulich, Brandon Haynes were agents of WWO, (now WYND) WVO, and WVR, and as such, Plaintiff alleges that the actions in this count apply to every Defendant named in this Complaint.

253.    Tennessee law, specifically Title 66, Chapter 32 of the Tennessee Time-Share Act of 1981 (the "Act") governs timeshare sales in the State of Tennessee ("Timeshare Act"). Tenn. Code Ann. § 66-32-101.

254.    Each of the misrepresentations by WVR, WVO and WYND's sales agents, including Melanie Aulich, Brandon Haynes, enumerated in the foregoing paragraphs were made in violation of the Tennessee Time-share Act.

255.    Any person affected by a violation of this act has a claim for appropriate relief. Tenn. Code Ann. § 66-32-118.

256.    Among other things, the Timeshare Act requires that timeshare sellers and developers must prepare and register a Time-share Public Offering Statement ("POS") with the Tennessee Real Estate Commission ("TREC") prior to offering time-share contracts for sale. Tenn. Code Ann. § 66-32-123.

257.    Further, § 66-32-112 of the Act requires that the POS be provided to the prospective purchasers of the timeshare prior to closing any sale.

258.    No POS was provided to the Plaintiff by WVR, WVO or WYND prior to the purchase of one or more Wyndham timeshares in a meaningful way, because it is literally hundreds of pages and often provided in an electronic format that cannot be reviewed before closing.

259.    The POS on file with the TREC was not provided to the Plaintiff in a meaningful way, because it is hundreds of pages and the Plaintiff was not advised what was in it or how much there was to review prior to signing, by WVR, WVO or WYND, prior to the purchase of one or more Wyndham timeshares.

260.    WVR, WVO and WYND (with or without a properly delivered POS), failed to fully and accurately disclose to the Plaintiff the information required under Tenn. Code Ann. § 66-32-112 of the Timeshare Act.

261. The POS did not properly disclose initial or special fees due from the Plaintiff at closing, nor provide an accurate description of the purpose and method of calculating fees. Tenn. Code Ann. § 66-32-112.

262. The transaction entailed several special fees due from the Plaintiff that were not disclosed in the POS or were not properly disclosed with the description of the purpose and calculation method.

263. Pursuant to the Act, the POS must provide "A description of any liens, defects, or encumbrances on or affecting the title to the time-share interval." Tenn. Code Ann. §66-32-112(7).

264. Furthermore, the Timeshare Act states that Wyndham must disclose "(11) Any restraints on alienation of any number of portion of any time-share intervals." Tenn. Code Ann. §66-32-112(11).

265. Pursuant to the Act, "A public offering statement must be provided to each purchaser of a time-share interval and "must contain or fully and accurately disclose…" certain mandatory provisions.

266. T.C.A. § 66-32-112(9) indicates the verbiage that must be contained in the cancellation language of the public offering statement. It reads as follows:

**A public offering statement must be provided to each purchaser of a time-share interval and must contain or fully and accurately disclose:**
**(9) A statement that within ten (10) days from the date of the signing of the contract made by the purchaser, where the purchaser shall have made an on-site inspection of the time-share project prior to the signing of the contract of purchase, and where the purchaser has not made an on-site inspection of the time-share project prior to the signing of the contract of purchase fifteen (15) days from the date of signing of the contract, the purchaser may cancel any contract for the purchase of a time-share interval from developer;**
**(T.C.A. § 66-32-112(9))**

267. Section 1260-06-04 of the Real Estate Commission Rules states in full:

**The following statement shall appear in boldface and conspicuous type in:**

**(1) Every public offering statement; and**

**(2) Every contract for the sale of a timeshare interval, immediately above the   space reserved for the signature of the purchaser.**

**"You May Cancel a Contract to Purchase a Time-Share Interval within Ten (10) Days from the Date of the Signing of the Contract, Where You Have Made an On-Site Inspection of the Time-Share Project Before Signing the Contract, and, if You Have Not Made Such an Inspection, within Fifteen (15) days from the Date of the Signing of the Contract. If You Elect to Cancel, You May Do So by Hand Delivering Notice to the Seller at [insert address] within the Designated Period, or by Mailing Notice to the Seller (or His Agent for Service of Process) by Prepaid United States Mail at [insert address] Postmarked Anytime within the Designated Period."**

**(Rules of the Tennessee Real Estate Commission Chapter 1260-06-.04)**

268.    Plaintiff avers that WVR failed to include the required rescission language in the contract for the sale of the timeshare at issue thus violating T.C.A. § 66-32-112(9) and Rules of the Tennessee Real Estate Commission Chapter 1260-06-.04

269.    Plaintiff avers that WVR failed to include the required rescission language in the POS for the sale of the timeshare issue, thus violating T.C.A. § 66-32-112(9) and Rules of the Tennessee Real Estate Commission Chapter 1260-06-.04

270.    WVR, WVO and WYND failed to make the required disclosures, including but not limited to liens, defects, encumbrances and restraints on alienation to the Plaintiff as required under the Timeshare Act.

271.    WVR, WVO and WYND violated Tenn. Code Ann. § 66-32-132 of the Timeshare Act entitled Advertising Specific Prohibitions.

272.    WVR, WVO and WYND's sales agents, including Melanie Aulich, Brandon Haynes, violated Section 66-32-132 of the Timeshare Act by advertising and marketing the Wyndham timeshares to the Plaintiff in such ways that omitted material information and/or made fraudulent, deceptive, misleading statements or representations, including as enumerated in Count I and II, as

41

well as but not limited to the following:

    a.  Made representations to the Plaintiff as to the availability of a resale program and/or rental program offered by or on behalf of WVR, WVO and WYND or their affiliates without the program being made a part of the offering and submitted to the commission;

    b.  Made representations that the timeshares offered to the Plaintiff was limited as to quantity or restricted as to time without the numerical quantity and/or time applicable to the offer being conspicuously disclosed;

    c.  Made statements concerning the availability of the timeshares being sold to the Plaintiff at a particular price without properly disclosing the number of such timeshares then for sale at the price being disclosed or set forth to the Plaintiff;

    d.  Misrepresented the size, nature, extent, qualities, or characteristics of the accommodations or facilities which comprise the timeshares being purchased by the Plaintiff;

    e.  Misrepresented to the Plaintiff the nature or extent of any services incident to the timeshares purchased by the Plaintiff, including but not limited to rental, advisory, exchange and resell services;

    f.  Misrepresented to the Plaintiff that certain facilities and/or services available to the Plaintiff was for her exclusive use;

    g.  Made misleading and/or deceptive representations to the Plaintiff with respect to the contents of the timeshares and/or timeshare programs being sold to the

42

Plaintiff, as well as, misleading and/or deceptive representations regarding the purchase contract, the purchaser's rights, privileges, benefits or obligations under the Plaintiff's timeshare contracts;

h.  Misrepresentations to the Plaintiff regarding the conditions under which the Plaintiff may participate in one or more exchange, rental or resell programs as enumerated above;

273.  WVR, WVO and WYND violated Tenn. Code Ann. § 66-32-131 of the Timeshare Act entitled Misleading Advertising Unlawful.

274.  WVR, WVO and WYND's sales agents, including Melanie Aulich, Brandon Haynes, violated Section 66-32-131 of the Timeshare Act in that he sold the Plaintiff' timeshares in Tennessee using certain advertisements, publications, materials, pictorial representations and other marketing material that contained false and/or misleading statements.

275.  WVR, WVO and WYND violated Tenn. Code Ann. § 66-32-133 by failing to clearly and conspicuously disclose the approximate duration of the sales presentation when he told the Plaintiff she was only required to stay for 45 minutes but pressured in to staying for over many hours.

276.  Every time Plaintiff purchased, she was told that she was being offered a special deal, good for that day only, or that she had been sent a special offer which in truth was never sent in order to create a fear of loss, which is a violation of this Act in Section 66-32-132(2), as it creates a false sense of urgency and is a high-pressure sales tactic.

277.  WVR, WVO and WYND violated Section 66-32-132(10) (section f above) when they misrepresented or implied that the timeshares and services were available for the exclusive use of the Plaintiff, when in actuality, anyone can rent a Wyndham timeshare by going on internet travel websites. Furthermore, WVR, WVO and WYND rent them out to the public, without owner

43

authorization, to the public.

278.    WVR, WVO and WYND violated paragraph 272 section h by failing to disclose that the contract was of perpetual duration.

279.    As a proximate result, Plaintiff suffered damages, for which Plaintiff seeks compensatory damages plus interest and costs, and such other and further relief this Court deems appropriate.

280.    Plaintiff further seeks punitive damages, as such conduct was malicious, intentional, fraudulent and/or reckless.

281.    Plaintiff further seeks reasonable attorney fees.

## COUNT VIII (CONVERSION)

### (WYND, WVO, WVR)

282.  Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

283.    WYND, WVO and WVR stated that on the date of February 28, 2017, they were dispossessing Plaintiff of her personal property rights in their VOI "points" by freezing her timeshare accounts, in accordance with WYND, WVO and WVR's February 9 letter.

284.    WYND, WVO and WVR's announcement put them in the sole control of Plaintiff's account, because even if Plaintiff is able to make a reservation, she does not know when and if Defendants will cancel a reservation, as Defendants stated that they would.

285.    The WYND, WVO and WVR's freezing of Plaintiffs' accounts is in direct defiance to the Plaintiffs' purchased property rights in the timeshares, and as a result, Plaintiff has suffered damages.

286.    Plaintiff further avers that WYND, WVO and WVR converted Plaintiffs' property, as they have a routine practice of renting resort rooms/reservations to the general public, and collecting and retaining the funds and compensation from such rental, all the while denying Plaintiff the

44

availability to the rooms and reservations which she purchased, and Plaintiff pays to maintain.

287.     The rental income is kept as the sole property of the WYND, WVO and WVR and is not used in any way to compensate the Plaintiff, and other similarly-situated timeshare owners, for the loss of use and enjoyment of her timeshare properties.

288.     The retention of these funds by the WYND, WVO and WVR constitutes conversion as the WYND, WVO and WVR have acted in defiance of the Plaintiffs' property rights.

289.     This practice is an ongoing occurrence by the Defendants and thus, is an ongoing conversion of the Plaintiffs' timeshare assets, as well as other similarly-situated timeshare owners.

## COUNT IX (TRESPASS)

### (WYND, WVO, WVR)

290.     Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

291.     WYND, WVO and WVR removed Plaintiffs' access to use of her account and prevented the Plaintiff, who has real property rights because she holds a deed to her timeshare, when they notified Plaintiff that her right to enter and have access to her VOI was no longer valid starting on February 28, 2017.

292.     WYND, WVO and WVR's notification of such action is an intentional interference with Plaintiffs' real property rights.

293.     Plaintiff did not consent to this interference with her rights and alerted WYND, WVO and WVR to this fact in writing on February 17, 2017.

294.     WYND, WVO and WVR are continuing in their ongoing invasion of Plaintiffs' possession of her property with their announced intention to prevent Plaintiff from making reservations, or using her points, which are already paid for.

295.    Plaintiff is suffering ongoing damages as a result of this trespass to her real estate.


## PREMISES CONSIDERED, PLAINTIFF PRAYS:

1.    That process issue and the Defendants, each of them, and be required to respond in accordance with the "Tennessee Rules of Civil Procedure" ;

2.     Rescission any existing contracts and return of all monies paid;

3.    That Plaintiff be awarded compensatory damages and punitive or treble damages in an amount of $500,000;

4.    That all discretionary costs be awarded to the Plaintiff;

5.    That reasonable attorney fees be awarded to the Plaintiff;

6.    That the costs of this cause be taxed to the Defendants; and

7.    For such other general relief, the Court deems just and proper.


Respectfully submitted,


 /s/ Aubrey T. Givens
Aubrey Givens (BPR No. 21491)
Aubrey Givens & Associates, PLLC
231 W. Old Hickory Blvd.
Suite B, Second Floor
Madison, TN 37115
(615) 248-8600
contactus@givenslawfirm.com

46